IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED WITH CALL NUMBER (434) 709-8178 THAT IS IN THE CUSTODY OR CONTROL OF VERIZON WIRELESS | Case No. _____6:26mj17_____  <br><br> **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Brandon Smock, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain cellular device assigned with call number (434) 709-8178 ("the SUBJECT ACCOUNT"), with listed subscriber unknown, that is in the custody or control of Verizon Wireless ("Verizon"), a wireless communications service provider that is headquartered at 1095 Avenue of the Americas, New York, NY 10036.  As a provider of wireless communications service, Verizon is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15).

2.      I am a Special Agent with the U.S. Department of Homeland Security, Homeland Security Investigations ("HSI"), and have been employed by HSI since July 2019. I have training and experience in the enforcement of the criminal laws of the United States, including the preparation, presentation, and service of subpoenas, affidavits, criminal complaints, search warrants, and arrest warrants. As a federal agent, I am authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States. I am thus a "federal law enforcement officer" as defined by Fed. R. Crim. P. 41(a)(2)(C).

3.      This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41 to require Verizon to disclose to the government the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

4.      Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act.  See 18 U.S.C. §§ 3121-3127.  The requested warrant therefore includes all the information required to be included in an order pursuant to that statute.  See 18 U.S.C. § 3123(b)(1). I understand that the United States intends to separately (and contemporaneously) seek an order authorizing a "pen register" and "trap and trace device" pursuant to the Pen Register Act, in addition to the requested search warrant.

5.      The facts in this affidavit come from my personal observations, my training and experience, my review of documents, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all my knowledge about this matter.

6.      I am currently attempting to arrest Jesus DIAZ. On April 9, 2026, a grand jury in the Western District of Virginia charged DIAZ by indictment with numerous felony offenses, i.e., violations of 18 U.S.C. §§ 875(d) (*Transmitting Threats to Injure Reputation*), 2252(a)(2) (*Distribution of Child Pornography*), 2261A(2)(B) (*Cyberstalking*), 2251(a) (*Production of Child Pornography*), and 2422(b) (*Enticement of a Minor*). Given the return of this indictment, I

2

submit that there is probable cause to believe that violations of these statutes have occurred. DIAZ is the subject of an active arrest warrant resulting from this indictment. I submit that there is also probable cause that the location information described in Attachment B will assist law enforcement in arresting Jesus DIAZ, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

7.    The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated and prosecuted; *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE FOR THE SUBJECT ACCOUNT

8.    I recently obtained a warrant to search DIAZ's residence at 224 Parkway Drive in Danville, Virginia. *See* Case No. 6:26-mj-15. I fully incorporate my affidavit supporting that warrant (which itself incorporates another affidavit from Case No. 6:26-mj-4). As discussed in my affidavit, DIAZ is a longtime resident of Danville, Virginia, and is believed to have lived at 224 Parkway Drive for a period of years.

9.    DIAZ is believed to have a fairly high level of technical sophistication. Among other things, DIAZ's phones (seized in December 2024) contained references to virtual private networks (VPNs) used to shield DIAZ's true Internet Protocol (IP) address. DIAZ also appears to have utilized a browser with enhanced privacy settings. And he has used voice-over IP phone applications to establish social media accounts in the course of his criminal activity that do not tie back to a traditional phone number. Given DIAZ's technical savvy, I think it is likely that DIAZ knows that his devices can be easily, and irrevocably, remotely wiped.

10.     In addition to the foregoing facts, DIAZ is also believed to be highly alert for law enforcement activity directed at him. One minor victim indicated to law enforcement that DIAZ (with whom she had a romantic relationship between approximately May and October 2024) would routinely change his social media accounts; DIAZ told her that this was to avoid detection by law enforcement. I also believe, based on my review of DIAZ's phones, seized in December 2024, that DIAZ has one or more security cameras monitoring the 224 Parkway Drive address. Although it is difficult to say for sure, I believe I have seen what could be a camera on the side of the house while surveilling the property in April 2026.

11.     In preparation for arrest operations, law enforcement agents have surveilled 224 Parkway Drive. There are approximately four vehicles parked outside this residence; law enforcement have observed approximately four people, including a person believed to be DIAZ's father, with whom DIAZ was known to reside. Since April 6, 2026, when surveillance began, law enforcement has not seen Jesus DIAZ.

12.     I believe that Jesus DIAZ still lives at 224 Parkway Drive; I have no indication that DIAZ has moved. For example, DIAZ's 2025 tax records (prepared in February 2026), show the 224 Parkway Drive address; so do numerous other accounts, including financial accounts, food delivery services, and United States Postal Service records. Additionally, one of the vehicles parked at the residence has an attached license plate that was issued to Jesus DIAZ but belongs to a different vehicle.

13.     It is possible that DIAZ has remained inside the residence or has otherwise avoided notice by law enforcement since April 6, 2026. However, it is also possible that DIAZ may be elsewhere for reasons that are unknown, such as personal or work travel. Law enforcement wishes to execute the arrest warrant for DIAZ at the same time that it executes the

search warrant. Otherwise, given DIAZ's technological sophistication, there is a high likelihood that DIAZ could remotely wipe his electronic accounts and devices if DIAZ is not apprehended before the execution of the warrants.

14.    I believe that DIAZ may be using a new phone number—believed to be obtained after two other phones were detained at the Hartsfield-Jackson Atlanta International Airport in December 2024. Notably, a cover sheet prepared by DIAZ's tax preparer in February 2025 shows a listed phone number of (434) 709-8178 (the SUBJECT ACCOUNT). This same phone number is also listed in subscriber information provided in August 2025 by a financial company utilized by DIAZ for credit services. The SUBJECT ACCOUNT is also associated with DIAZ's United States Postal Service account; DIAZ received a package at 224 Parkway Drive as recently as March 30, 2026.

15.    HSI has issued an administrative subpoena to Verizon for records associated with the SUBJECT ACCOUNT; the records have not yet been received. Open-source and law enforcement tools indicate that Verizon is the service provider for the SUBJECT ACCOUNT.

16.    Based on the aforementioned information, I believe that DIAZ is the individual utilizing the SUBJECT ACCOUNT, and that the SUBJECT ACCOUNT is serviced by Verizon. I believe, through training and experience, that the installation and use of a pen register and a trap and trace device will assist in the location and subsequent arrest of Jesus DIAZ. At this time other investigative approaches (such as requesting that DIAZ turn himself in, or contacting DIAZ's place of work) are not viable due to the need to avoid the destruction of evidence.

17.    In my training and experience, I have learned that Verizon is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and

generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

18. Based on my training and experience, I know that Verizon can collect cell-site data on a prospective basis about the SUBJECT ACCOUNT. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as Verizon typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

19. Based on my training and experience, I know that Verizon also can collect per-call measurement data, which Verizon also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the

speed with which signals travel between the device and the tower.  This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

20.    Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it.  Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

21.    Based on my training and experience, I know that wireless providers such as Verizon typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service.  I also know that wireless providers such as Verizon typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business.  In my training and experience, this information may assist in DIAZ's apprehension because the information can be used to identify the SUBJECT ACCOUNT's user or users and may assist in ascertaining the location of DIAZ.

**AUTHORIZATION REQUEST**

22.    Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.  The United States will separately seek a pen register order under 18 U.S.C. § 3123 authorizing the installation and use of a pen register and/or trap and trace device to record, decode, and/or capture certain information in Attachment A for each communication to or from the SUBJECT ACCOUNT, without geographic limit, for a period of thirty days (30) days pursuant to 18 U.S.C. § 3123(c)(1).

23.    I further request that the Court direct Verizon to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.  Because the warrant will be served on Verizon who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

BRANDON M SMOCK  Digitally signed by BRANDON M SMOCK
Date: 2026.04.10 11:47:00 -04'00'

Brandon Smock, Special Agent
Homeland Security Investigations

Reviewed by:

Lee S. Brett
Assistant United States Attorney

Received by reliable electronic means, and subscribed and sworn to me by telephone this 10th day of April, 2026.

_____
Hon. C. Kailani Memmer
UNITED STATES MAGISTRATE JUDGE